**UNITED STATES of America, Plaintiff–Appellee,**

v.

**Cyril MELTON, Defendant–Appellant.**

**No. 88–4728.**

United States Court of Appeals, Fifth Circuit.

Aug. 30, 1989.

Jim Rose, Gulfport, Miss., court appointed, for defendant-appellant.

George Phillip, U.S. Atty. and Peter Barrett, Asst. U.S. Atty., Biloxi, Miss., for plaintiff-appellee.

Before GEE, REAVLEY and JOLLY, Circuit Judges.

GEE, Circuit Judge:

*Facts*

Marjorie Cox, a resident of North Carolina, and Larry Ross, a resident of Washington, planned to meet in Gulfport and

then attend the Mardi Gras celebrations in the French Quarter. When Cox and Ross travelled to New Orleans with another couple, they parked at the Hyatt Hotel and took a cab to the Quarter. Once in the French Quarter, the two couples continued the partying and drinking begun earlier in the day.

Later, during a rainstorm, the two couples became separated and Ross and Cox began walking back to their car at the Hyatt. On the way, they saw Melton driving at a snail's pace in heavy traffic and asked him first for directions and then for a ride to the hotel in exchange for $5. Next, Melton's girl friend Damita rejoined him in the car, having gotten a soft drink in a nearby store. When they got to the Hyatt, Ross and Cox were surprised to find that their car was gone, taken back to Gulfport by the other couple. Ross then asked Melton to drive them to Gulfport for an unspecified sum of money. Ross claims that Melton told him he was an off-duty cab driver. Melton reluctantly agreed, taking his girlfriend Damita home before the remaining three of them set out for Gulfport.

Ross and Cox settled down in the backseat and slept while Melton drove. When Melton got low on gas, he pulled off the road and found a station. Melton paid $9 for gas because Ross told him he did not have any money for gas. Melton then began to question aloud whether he would get paid for making the trip. Ross assured him that he would be paid. Melton, apparently not convinced, tricked Ross into getting out of the car on the pretext that he wanted him to drive. When Ross got out to switch to the driver's seat, Melton sped off with Marjorie Cox asleep in the backseat.

The testimony is in conflict at this point. Melton first testified that he had let Marjorie Cox out of the car shortly after leaving Ross at the side of the road. He later said he made up that story because he got scared after learning the next day that Cox had been found dead at the side of the road. He then said Marjorie died because she panicked and jumped out of his car while it was driving 65 miles an hour, after she had failed to convince him that Ross really would pay him. The prosecution hints darkly that she may have been pushed from the car.

In any event, Melton went back to Damita's house, where he was unable to sleep. He later heard from his sister, who had read in the newspaper that a body had been found. Melton testified that he assumed she was hit by a tractor-trailer rig that had been behind them in the right lane of the road when she jumped.

Melton was indicted in March 1988 for kidnapping, in violation of 18 U.S.C. § 1201(a)(1). He pled not guilty, and trial began in June. During jury selection the government peremptorily struck three black veniremen, and only one black juror was seated. The defendant, a black man, made a *Batson* challenge and the court required the government to articulate its reasons for its peremptory challenges. The government complied, and the court denied Melton's *Batson* challenge. At the end of the government's case, Melton moved for a judgment of acquittal, which was also denied. The jury returned a guilty verdict.

Both sides filed objections to the presentence investigation report. The trial judge held a hearing on the objections and sentenced Melton to 360 months imprisonment, 5 years supervised release, a $50 assessment, and payment of the costs of his supervised release.

*Analysis*

A. *Sufficiency of the Evidence.*

■ Melton contends that the government did not succeed in proving beyond a reasonable doubt that he intended to kidnap Cox, and that intent is an essential element of the crime. The federal kidnapping statute 18 U.S.C. § 1201, provides in relevant part:

(a) Whoever unlawfully seizes, confines, inveigles, decoys, kidnaps, abducts or carries away and holds for ransom or reward or otherwise any person ... when:

(1) the person is willfully transported in interstate or foreign commerce ...

shall be punished by imprisonment for any term of years or for life.

The issue is whether, from the evidence presented at Melton's trial, a rational trier of fact could have found beyond a reasonable doubt that Melton confined Cox and held her "for ransom or reward or otherwise". At trial the government emphasized the "or otherwise" statutory language, suggesting that Melton intended to assault Cox sexually. The government's evidence of this intent was that Melton may have touched Cox's leg during the drive. The government urges on appeal that kidnapping need not be for pecuniary gain, so long as the kidnapper seeks to derive some benefit. In response to the government's argument, Melton notes that Cox's leg was resting on the arm rest between the two front seats. A reasonable jury could have believed the government's version of the facts, which would be evidence sufficient to sustain the jury verdict.

The government, however, did present other evidence tending to show that the defendant had other motives for carrying out the abduction. First, Melton allegedly represented himself as an off-duty cab driver. The jury might also have considered the uncontested evidence that Melton tricked Ross to get him out of the car. In addition, the jury heard evidence that Melton had restrained Marjorie Cox from getting out of his car at the Mississippi Weigh Station because there was a police-type vehicle present there. Finally, the jury learned that Melton had first given the FBI a false inculpatory statement. All of these facts, viewed in their totality, were a sufficient basis for the jury to conclude that Melton had kidnapped Cox for some purpose of his own. This jury verdict is thus supported by sufficient evidence to sustain it.

### B. Evidence of Prior Convictions.

■ The defendant argues that evidence of his past convictions should not have been admitted at his trial. Under Rule 609(a)(1) of the Federal Rules of Evidence, the court must find that the probative value of admitting a prior conviction which does not involve dishonesty or a false statement outweighs its prejudice before admitting it for impeachment purposes. See, e.g., State v. Preston, 608 F.2d 626, 639 (5th Cir.1979) cert. denied, 446 U.S. 940, 100 S.Ct. 2162, 64 L.Ed.2d 794 (1980) (requiring that such a finding be on the record).

The trial court made such an on-the-record finding regarding the basis for the government's cross-examination of the defendant's prior convictions, and no abuse of discretion is shown.

### C. Batson Challenge.

■ The defendant argues that the government's preemptory challenges violated his due process rights as illustrated by Batson v. Kentucky, 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986). As the Supreme Court explained in Batson, "Once the defendant makes a prima facie showing, the burden shifts to the State to come forward with a neutral explanation for challenging black jurors." Id. at 97, 106 S.Ct. at 1723.

In today's case, we are convinced that the trial court properly determined that the defendant's due process rights were not violated. One black venireman was challenged because he was a member of a labor union whose president had been convicted before the trial judge in this case. Another was challenged in order to get to a venireman thought more desirable as a juror, a black Air Force employee retired from the military. The final black venireman struck was challenged because he chewed gum and was generally inattentive. See United States v. Lance, 853 F.2d 1177 (5th Cir. 1988). These racially neutral explanations were sufficient to support the trial court's findings that the defendant's due process rights were not violated.

### D. Sentencing.

■ The judge sentenced the defendant on alternative grounds to 360 months imprisonment. The sentence was based on the judge's determination that the defendant was a career offender under section 4B1.1 of the federal sentencing guidelines.

Because we affirm the sentence as grounded in section 5K2.1, we need not decide whether section 4B1.1 would also serve as a proper basis for the sentence.

Section 5K2.1 states that, "If death resulted, the court may increase the sentence above the authorized guideline range." Since the defendant was found guilty of kidnapping Marjorie Cox and was responsible for her death, a term of 30 years is not excessive and the conviction and sentence are AFFIRMED.