UNITED STATES of America, Appellee,

v.

Herbert James EAGLE
THUNDER, Appellant.

UNITED STATES of America, Appellee,

v.

Hobart William GARNEAUX, Appellant.

Nos. 89–5122, 89–5128.

United States Court of Appeals,
Eighth Circuit.

Submitted Sept. 13, 1989.

Decided Jan. 11, 1990.

Ramon A. Roubideaux, Rapid City, S.D., for Eagle Thunder.

Bernard E. Duffy, Fort Pierre, S.D., for Garneaux.

David L. Zuercher, Pierre, S.D., for U.S.

Before ARNOLD, and BEAM, Circuit Judges, and HENLEY, Senior Circuit Judge.

HENLEY, Senior Circuit Judge.

Hobart William Garneaux and Herbert James Eagle Thunder appeal from final judgments entered in the district court following a joint jury trial on charges of kidnapping and aggravated sexual abuse in violation of 18 U.S.C. §§ 1153 (offenses committed within Indian Country), 1201(a)(2) (kidnapping), 2241(a), 2245(2)(A) (forcible rape), and 2241(c), 2245(2)(A) (carnal abuse). Garneaux was acquitted of the sexual abuse charges but convicted of kidnapping. His sole contention on appeal is that the evidence is insufficient to support the verdict. Eagle Thunder was acquitted of kidnapping but convicted of forcible rape and carnal abuse. On appeal, he alleges that the district court erred in denying his motion for severance, ruling on certain evidentiary matters, denying his motion for acquittal, and applying the Sentencing Guidelines. We affirm in part and reverse and remand in part.

*Background*

The evidence, and all reasonable inferences therefrom, viewed in the light most favorable to the government reveals the following. At approximately 10:30 p.m. on July 22, 1988, Garneaux stopped his automobile near a playground located in West Brule, South Dakota, where Vanessa, a female aged eleven, Jade, a boy aged eight, and another child were playing.[1] Garneaux asked Vanessa if she wanted to "ride around." She told Garneaux she had to be home by 10:00 p.m. Garneaux agreed, and Vanessa and Jade got in the back seat of

---

1. We have omitted the last names of the victim and the other child involved in this incident.

the automobile. Verna Roundhead was in the passenger seat. Garneaux drove Roundhead to her home in Fort Thompson, South Dakota, which is about seventeen miles from West Brule. At sometime during the trip to Fort Thompson, Vanessa grabbed Garneaux's neck in an attempt to make him take her home. After Garneaux took Roundhead home, Vanessa asked him to take her to her mother who was playing bingo in Lower Brule, but Garneaux refused.

At some point while in Fort Thompson, Garneaux picked up Eagle Thunder and Harold Jones. Shortly after midnight, police officer William Hawk stopped the automobile in Fort Thompson. Garneaux told the officer that he was taking his grandchildren back to Lower Brule. Because Garneaux did not have a valid driver's license, Jones then drove the automobile. About twenty minutes later, police officer Ziegler stopped the automobile, which was still in Fort Thompson. Jones and Garneaux told the officer that the children were Garneaux's grandchildren. Officer Ziegler told Jones to take the children home. Vanessa testified she feared the officers would take her to jail for drinking and violating the curfew.

Jones testified that he then asked Eagle Thunder to drive. Vanessa, however, testified that Garneaux resumed driving, and that she asked Garneaux several times to take her home, but he refused. She further testified that everyone in the automobile had been drinking beer. Vanessa testified that Eagle Thunder had offered her something to drink out of a green bottle. She first stated she drank out of the bottle, but later said she refused. She testified the drinking made her drowsy and that she fell asleep.

Vanessa woke up while the automobile was parked at a place called the Iron Nation Boat Ramp. Vanessa got out of the automobile. Garneaux grabbed her and knocked her to the ground. While she was on the ground, Eagle Thunder ripped her jeans down the side and placed his hand over her mouth to prevent her from screaming. Vanessa testified that Eagle Thunder touched his "sex organ" to her "sex organ" and that it hurt. Vanessa then got up and told Jones Eagle Thunder had raped her. Jones hit Eagle Thunder.

Garneaux then drove Vanessa, Jade, Eagle Thunder, and Jones to Eagle Thunder's mother's home. She called the police, who arrived at approximately 5:00 a.m., and found Vanessa asleep on the couch. On arousing Vanessa, the officers smelled alcohol on her breath and found her unsteady on her feet. The officers took Vanessa to the hospital.

At the hospital, Dr. Gary Van Ert examined Vanessa. He found a bruise on her right arm that was several hours old and was consistent with a grip. He also found two tears in the vaginal area that were also several hours old and consistent with penetration by an erect penis.

## Analysis

### Garneaux

Garneaux's sole point on appeal is that the evidence is insufficient to sustain his conviction. The federal kidnapping statute provides that "whoever unlawfully seizes, confines, inveigles, decoys, kidnaps, abducts, or carries away and holds for ransom or reward or otherwise any person ... shall be punishable for any term of years or for life." 18 U.S.C. § 1201(a).

Garneaux argues there was no evidence that he forced or enticed Vanessa to enter his automobile. Even if Vanessa had initially consented to accompanying Garneaux, that fact would not prevent the occurrence of a kidnapping because Garneaux thereafter detained Vanessa despite her repeated requests to be taken home or to her mother. On similar facts, the Ninth Circuit upheld a kidnapping conviction. In *United States v. Wesson*, 779 F.2d 1443, 1444 (9th Cir.1986) (per curiam), the court found that although the victim voluntarily agreed to accompany the defendant, she did not consent "to the kind of trip eventually undertaken." The court noted that the victim later told the defendant she wanted to go home and continued on the journey because she was afraid of the consequences of escaping. *Id. See also Unit-*

ed States v. McBryar, 553 F.2d 433, 434 (5th Cir.) (per curiam) (kidnapping conviction upheld where defendant agreed to take victim to one destination but drove in opposite direction and refused her requests to be let out of automobile), *cert. denied*, 434 U.S. 862, 98 S.Ct. 191, 54 L.Ed.2d 136 (1977).

■ Garneaux also argues there was insufficient evidence that he held Vanessa for "ransom or reward or otherwise." In *United States v. McCabe*, 812 F.2d 1060 (8th Cir.), *cert. denied*, 484 U.S. 832, 108 S.Ct. 108, 98 L.Ed.2d 67 (1987), this court noted that "or otherwise" has been "broadly interpreted ... and 'does not require a motive of pecuniary profit.'" *Id.* at 1062, quoting *United States v. Crosby*, 713 F.2d 1066, 1070–71 (5th Cir.), *cert. denied*, 464 U.S. 1001, 104 S.Ct. 506, 78 L.Ed.2d 696 (1983). The court stated that "'Congress by the phrase "or otherwise" intended to include any object of a kidnapping which the perpetrator might consider of sufficient benefit to himself to induce him to undertake it.'" *Id.*, quoting *United States v. Wolford*, 444 F.2d 876, 881 (D.C.Cir.1971). In this case, we believe that the evidence that Garneaux gave Vanessa beer, lied to the police, grabbed Vanessa and knocked her to the ground was sufficient for the jury to conclude that Garneaux kidnapped Vanessa for "some purpose of his own." *United States v. Melton*, 883 F.2d 336, 338 (5th Cir.1989) (fact defendant may have touched victim's leg sufficient for jury to infer defendant kidnapped victim with intent to sexually assault; court also found "or otherwise" satisfied because defendant restrained victim from getting out of vehicle because he believed police were nearby and gave false statement to FBI). *See also United States v. Hoog*, 504 F.2d 45, 51 (8th Cir.1974) ("or otherwise" satisfied even though defendant did not rape victim but codefendant did), *cert. denied*, 420 U.S. 961, 95 S.Ct. 1349, 43 L.Ed.2d 437 (1975).

*Eagle Thunder*

■ Eagle Thunder first argues that the district court erred in denying his motion to sever his trial from that of Garneaux, asserting that the introduction of a rape conviction against Garneaux unduly prejudiced him. The government argues that Eagle Thunder has not preserved this issue for review because he did not renew his pre-trial motion for severance at the close of the government's case, the close of the evidence, or at the time the evidence was introduced. We are inclined to agree. It appears that Eagle Thunder did not renew his motion at the time the evidence was introduced, and that the district court may have been denied "the opportunity to rule on the matter in its concrete form." *United States v. Marin–Cifuentes*, 866 F.2d 988, 994 (8th Cir.1989). *See also United States v. Thornberg*, 844 F.2d 573 (8th Cir.), *cert. denied*, — U.S. —, 108 S.Ct. 2913, 101 L.Ed.2d 944 (1988).

■ Furthermore, we believe that Eagle Thunder in effect consented to the admission of the evidence. *See Marin–Cifuentes*, 866 F.2d at 994. After considering the government's offer of proof, the court overruled Garneaux's objection that the evidence be excluded under Fed.R.Evid. 404(b). The court indicated it would give a cautionary instruction restricting the evidence to the sexual abuse charges against Garneaux. Eagle Thunder only requested that the instruction be clear that the evidence did not concern him. The court assured Eagle Thunder that the instruction would not name him. He did not object.[2]

■ Moreover, "[t]he decision to sever lies in the trial court's discretion and we will not find the refusal to sever an abuse of discretion absent a showing of 'real prejudice.'" *United States v. Davis*, 882 F.2d 1334, 1340 (8th Cir.1989). In this case, the introduction of the evidence did not prejudice Eagle Thunder. The fact that the jurors acquitted Garneaux of the sexual abuse charges demonstrates that the jurors "in fact considered the evidence against

**2.** We therefore find that Eagle Thunder's assertion that the cautionary instruction was defective because it did not expressly exclude him is not properly on appeal. In any event, the assertion clearly is without merit.

each defendant separately." *United States v. Wagner*, 884 F.2d 1090, 1100 (8th Cir.1989).

■ Eagle Thunder also argues that the district court erred in excluding evidence that Dr. Van Ert had found a non-recent tear in Vanessa's hymenal ring. Except for limited exceptions, Fed.R.Evid. 412 provides that evidence of the victim's past sexual behavior is inadmissible. *United States v. Azure*, 845 F.2d 1503, 1505 (8th Cir.1988). "[S]ubject to the procedural and relevancy requirements of subdivision (c)," Fed.R.Evid. 412(b)(2)(A) allows "evidence of specific instances of an alleged victim's past sexual behavior ... if offered 'upon the issue of whether the accused was or was not ... the source of the ... injury.'" *Id.* (quoting Rule) (footnote omitted).

■ We first note that Eagle Thunder failed to file a written notice of intent to offer the evidence, as required by subdivision (c), and for this reason alone the district court could have denied his offer of proof. *See United States v. Provost*, 875 F.2d 172, 177 (8th Cir.), *cert. denied*, —— U.S. ——, 110 S.Ct. 170, 107 L.Ed.2d 127 (1989). In any event, we find the district court properly excluded the evidence. "[T]he 'injury' exception allows a court to deviate from Rule 412's general rule only when the evidence establishes an injury ... that was sustained reasonably close in time to the alleged rape." *United States v. Shaw*, 824 F.2d 601, 608 (8th Cir.1987), *cert. denied*, 484 U.S. 1068, 108 S.Ct. 1033, 98 L.Ed.2d 997 (1988). In this case, the existence of a non-recent tear was not relevant to the source of the tears that were hours old. *See United States v. Azure*, 845 F.2d at 1505. On the facts of this case, we reject Eagle Thunder's assertion that the evidence was admissible to impeach Vanessa's credibility, *see id.* at 1506, or that exclusion of the evidence denied his right to confrontation, *see United States v. Duran*, 886 F.2d 167, 168–70 (8th Cir.1989); *United States v. Bartlett*, 856 F.2d 1071, 1088–89 (8th Cir.1988).

■ We also find that the district court properly excluded evidence that Vanessa had been beaten by her mother a week before the rape because Vanessa had already acknowledged the beating and her fear of her mother. *See United States v. Dennis*, 625 F.2d 782, 796–97 (8th Cir. 1980).

■ Eagle Thunder also challenges the sufficiency of the evidence. He argues there was no evidence of penetration.[3] We disagree. Dr. Van Ert testified that the two tears in the vaginal area were consistent with penetration by an erect penis. We find there was sufficient evidence that Eagle Thunder committed the rape by force. Vanessa testified that Eagle Thunder ripped her jeans down the side, placed his hand over her mouth, and that the intercourse was painful. *See United States v. Demarrias*, 876 F.2d 674, 678 (8th Cir. 1989) (evidence of force supported by minor victim's testimony that she was overcome by larger, stronger defendant who caused her pain).

Last, Eagle Thunder argues that the district court erred in applying the Sentencing Guidelines. The presentence report recommended a base offense level of 27, Guidelines § 2A3.1(a), a four-point upward adjustment because of the use of force, *id.* § 2A3.1(b)(1), a four-point upward adjustment because Vanessa was under the age of twelve, *id.* § 2A3.1(b)(2), and a four-point upward adjustment because Vanessa was abducted, *id.* § 2A3.1(b)(5), for a total offense level of 39. Because Eagle Thunder had a criminal history category of II, the Guideline range was 292 to 365 months.

Eagle Thunder filed objections to the report, asserting that there was no basis for the upward adjustments on account of force and abduction. He also objected, noting that the report contained many statements which Vanessa had given to the police and social service workers but which she had later refuted at trial or were inconsistent with her trial testimony. For example, the report related that Vanessa "advised investigating officers that on one oc-

---

**3.** 18 U.S.C. § 2245(2)(A) provides that for purposes of 18 U.S.C. § 2241(a) and (c) "contact involving the penis [and the vulva] occurs upon penetration, however slight."

casion she was able to exit the car and attempted to run away but was caught by Eagle Thunder and brought back to the car" and that "when the car parked one time she was taken from the car by Eagle Thunder who took her pants and panties off and raped her."

On cross-examination, Vanessa was asked, "You also told [the investigating police officer] that Herbie Eagle Thunder got out of Garneaux's vehicle and pulled you into the vehicle, is that true?" Vanessa replied, "No." Vanessa was also asked if she had gotten out of the automobile more than once. She replied, "No." She testified she had lied because of fear of her mother.[4]

At the sentencing hearing, counsel for Eagle Thunder again objected to the upward adjustments based on force and abduction. As to the use of force, he argued that the only evidence of force was that Eagle Thunder ripped Vanessa's jeans, and argued that the Guidelines contemplated a greater degree of force. The assistant United States attorney, who informed the court that he was not trial counsel, argued there was ample evidence of force, noting that Eagle Thunder ripped her jeans, placed his hand over her mouth, and had caused vaginal tears. In addition, he noted that the trial testimony indicated Eagle Thunder had pulled Vanessa out of the automobile before he raped her. Counsel for Eagle Thunder objected, arguing that the district court should not rely on statements in the police reports because Vanessa admitted at trial she had made false statements to the police. The trial judge responded that he had presided at trial and would rely only on trial testimony. The assistant United States attorney assured the court that "the factual information I gave the court all came from reading the transcript. There is nothing in what I gave to the court from the police reports." The court found its recollection of the trial testimony accorded with the government's version and overruled Eagle Thunder's objection to the adjustment based on force.

Eagle Thunder's counsel next argued that the adjustment for abduction was unwarranted because the jury had acquitted Eagle Thunder of kidnapping. The government responded that the acquittal for kidnapping did not preclude an upward adjustment for abduction at sentencing, arguing that under the Guidelines " '[a]bducted' means that a victim was forced to accompany an offender to a different location." Guidelines § 1B1.1, Application Note 1(a). In addition, the government argued that a lower standard of proof applied at sentencing than at trial. The government argued that there was ample evidence of abduction, noting that the testimony demonstrated that Eagle Thunder removed Vanessa from the automobile and took her to a different location where she was raped, that there was evidence "presented in the presentence report which is accurate that [Vanessa] left the vehicle at one time and was returned to the vehicle by [Eagle Thunder] against her will," and that Vanessa had asked to be taken home on at least two occasions. The court again noted that its recollection accorded with the government's evidentiary statement and accordingly overruled Eagle Thunder's objection.

Before pronouncing sentence, the court allowed Eagle Thunder to speak. Eagle Thunder responded, "Well, another thing I'd like to state ... would be even now at this sentencing ... the prosecution ... [is] still going on the lies which [s]he refuted ... and he's still basing the facts on those lies...." The court replied it "understood government counsel to say that he read the complete court reporter transcript," and asked counsel, "Is that correct or not?" Counsel replied that although he had read a "large portion of the transcript," he had not read the testimony of all the witnesses.

The court then imposed a sentence of 365 months imprisonment to be followed by three years supervised release.

On appeal, Eagle Thunder again argues that the court erred in relying on statements made in police reports and in applying the upward adjustments based on force

---

4. Throughout their briefs, Garneaux and Eagle Thunder suggest that because Vanessa admitted lying her trial testimony was incredible. We disagree. "Decisions as to credibility and as to

what weight particular testimony should receive properly rest with the jury." *United States v. McGinnis*, 783 F.2d 755, 758 (8th Cir.1986).

and abduction. The government argues that Eagle Thunder has waived these issues because of certain defects in his brief. For reasons to be mentioned, we believe that even under a plain error standard of review, there was error affecting "substantial rights resulting in a miscarriage of justice." *United States v. Gantos*, 817 F.2d 41, 43 (8th Cir.), *cert. denied*, 484 U.S. 860, 108 S.Ct. 175, 98 L.Ed.2d 128 (1987).

"[S]entences based upon material misinformation or erroneous assumptions violate due process." *United States v. Wright*, 799 F.2d 423, 426 (8th Cir.1986), citing *Townsend v. Burke*, 334 U.S. 736, 68 S.Ct. 1252, 92 L.Ed. 1690 (1948). In *Townsend v. Burke*, the Supreme Court found that a defendant who had been sentenced on the basis of erroneous assumptions concerning his criminal record had been "either overreached by the prosecution's submission of misinformation to the court or was prejudiced by the court's own misreading of the record." *Id.* at 740, 68 S.Ct. at 1255.

■■■ Although the government submitted misinformation to the court concerning Eagle Thunder's use of force, the information was not material because there was sufficient evidence of force to sustain his conviction under 18 U.S.C. § 2241(a). Guideline § 2A3.1(b)(1) (1987) provided for an upward adjustment "if the criminal sexual abuse was accomplished as defined in 18 U.S.C. § 2241 (including, but not limited to, the use or display of any dangerous weapons)." Application Note 2 provided that "'[a]ccomplished as defined in 18 U.S.C. § 2241' means accomplished by force, threat, or other means as defined in 18 U.S.C. § 2241(a) or (b) (*i.e.*, by using force against that person)...." We do not believe the Guidelines contemplate a greater degree of force than is necessary to sustain a conviction under 18 U.S.C. § 2241(a).[5]

■■■ However, we believe that the upward adjustment based on abduction was based on material misinformation. The government represented to the court that the adjustment for abduction was warranted because Eagle Thunder had removed Vanessa from the automobile and took her to another location where he raped her and that Vanessa had left the vehicle at one point and that Eagle Thunder had returned her to the automobile against her will. Vanessa refuted these statements at trial. "We are not at liberty to assume that items given such emphasis ... did not influence the sentence which the prisoner is now serving." *Townsend v. Burke*, 334 U.S. at 740, 68 S.Ct. at 1255. We note that the government also argued that the adjustment was warranted because Vanessa had asked to be taken home on two occasions. Vanessa, however, testified that she only asked Garneaux to take her home or to her mother. We believe a remand is necessary to determine if the upward adjustment based on abduction is warranted. We remind the court that at sentencing it can only consider information that has "sufficient indicia of reliability to support its probable accuracy." Guidelines § 6A1.3(a).

Accordingly, we affirm the convictions of Garneaux and Eagle Thunder but vacate Eagle Thunder's sentence and remand for resentencing in accordance with this opinion.

---

**5.** Section 2A3.1(b)(1) was amended effective November 1, 1989 to clarify the section. The amended section provides for an upward adjustment "(i)f the offense was committed by the means set forth in 18 U.S.C. § 2241(a) or (b)...." Amended Application Note 2 makes clear that force is one of the means set forth in 18 U.S.C. § 2241.