UNITED STATES of America, Plaintiff,

v.

George Andrew MYERS, Jr., Defendant.

Crim. No. 3-89-108.

United States District Court,
D. Minnesota,
Third Division.

April 3, 1990.

Lynn A. Zentner, Minneapolis, Minn., for plaintiff.

Scott Tilsen, Minneapolis, Minn., for defendant.

## STATEMENT OF REASONS FOR IMPOSING SENTENCE

MAGNUSON, District Judge.

I. Findings of Fact

Neither the government nor the defendant, George Andrew Myers, Jr., disputes the factual statements contained in the presentence investigation report. The court therefore adopts those statements as its findings of fact. For purposes of this opinion the court will provide a synopsis of those findings and will highlight the facts that are pertinent to sentencing.

On September 19, 1989, defendant's 15-year old stepdaughter stayed home from school because she was ill. Myers, a sergeant in the United States Marine Corps, had the day off from work and was home as well. At approximately 8:00 A.M. Myers entered his stepdaughter's bedroom clad only in a towel. The stepdaughter was lying in bed with the covers over her head. When Myers asked her why she did not get up, she replied that she was ill.

Myers approached the bed, grabbed the covers, and threw them to the floor. The towel around his waist also fell to the floor. Myers then pushed the victim down onto the bed and sat on top of her legs, strad-

dling her. He attempted to tie a military web belt around both of her hands but was unsuccessful. Myers briefly succeeded in tying the victim's left wrist to the headboard, but the victim was able to pull her hand free from the headboard. Myers also wrapped duct tape around the victim's right arm and tried to tie it to the bedpost. Again, the stepdaughter pulled her hand free.

Defendant next pulled up the victim's tank top, exposing her breasts. He kissed the victim's right breast but was thrown off balance and fell to the floor when the victim resisted. The victim pulled her top down and attempted to loosen the belt from her wrist. Myers then removed the belt. At some point during the struggle a can of soda pop had been spilled, and defendant left the room to get something to clean the spill. The victim ran downstairs and attempted to call the police. Myers depressed the receiver and told the victim not to call, but to wait until her mother got home. The victim then ran upstairs and locked herself into the bathroom.

For the next five hours the victim remained in the bathroom until her mother came home. Meanwhile, Myers cleaned the victim's room, washed her sheets, cleaned the soda pop stain, and washed about five loads of laundry. He also called the victim's mother and told her to come home for lunch. Periodically Myers talked to the victim through the bathroom door, telling her how sorry he was for what he had done and reassuring her that her mother would be home soon. When the victim's mother returned, she, the defendant and the victim sat in the living room and discussed the incident.

As a result of the assault the victim received minor cuts and bruises on her arms and hands, but she experienced emotional and psychological trauma that continues to the present. No other physical injuries were sustained.

On January 12, 1990, Myers pleaded guilty to a one count indictment charging abusive sexual contact in violation of 18 U.S.C. § 2244(a)(1). The plea was entered pursuant to a plea agreement between the prosecution and the defendant that Myers' sentence would not exceed 18 months of imprisonment. The parties also agreed that the sentencing guidelines, as they existed prior to November 1, 1989, would apply to the case.

## II. Application of the Guidelines

Defendant raises two issues with respect to guideline application. First, defendant argues that a two level enhancement for restraint of victim pursuant to guideline § 3A1.3 is not appropriate in this case because the offense conduct addressed by § 3A1.3 is already covered by guideline § 2A3.4, the guideline establishing the base offense level for this offense. Second, defendant contends that in order to calculate the proper offense level under § 2A3.4 the court must interpolate between § 2A3.4(b)(1) and § 2A3.4(b)(2).

As a preliminary matter, the court notes that § 2A3.4 has been amended effective November 1, 1989. However, the amended version of § 2A3.4 is not applicable to this offense because the parties have stipulated in the plea agreement that the prior guideline applies.

Resolution of the first issue depends on a determination of whether the Sentencing Commission intended for § 3A1.3 to apply to a case such as this. The application notes to § 3A1.3 provide some guidance. Note 1 explains that "physically restrained" is defined in the commentary to § 1B1.1, which states that "'[p]hysically restrained' means the forcible restraint of the victim such as by being tied, bound, or locked up" Guideline § 1B1.1. Application Note 1(i). According to Note 2, a § 3A1.3 enhancement applies "to any offense in which a victim was physically restrained in the course of the offense, except where such restraint is an element of the offense, specifically incorporated into the base offense level, or listed as a specific offense characteristic." Myers contends that his offense falls within the third exception and that a two-level increase should not be given.

The guideline applicable to the offense of abusive sexual contact is § 2A3.4. It es-

tablishes a base offense level of six and provides for a nine-level increase "[i]f the abusive sexual contact was accomplished as defined in 18 U.S.C. § 2241 (including, but not limited to, the use or display of any dangerous weapon)." [1] The commentary explains that this means

> accomplished by force, threat or other means as defined in 18 U.S.C. § 2241(a) or (b) (*i.e.*, by using force against that person; by threatening or placing that other person in fear that any person will be subject to death, serious bodily injury, or kidnapping; by rendering the victim unconscious; or by administering by force or threat of force, or without the knowledge or permission of the victim, a drug, intoxicant, or other similar substance and thereby substantially impairing the ability of the victim to appraise or control conduct).

Guideline § 2A3.4 Application Note 1.

Myers contends that if the nine-level enhancement for use of force applies, then an additional increase for restraint of victim constitutes double counting. This court in *United States v. Bell,* 716 F.Supp. 1207, 1210 (D.Minn.1989) has previously recognized the underlying policy of the guidelines to avoid double counting. Indeed, the commentary to § 3A1.3 reflects this policy.

Eighth Circuit precedent provides little assistance in construing § 3A1.3. However, in *United States v. Tholl,* 895 F.2d 1178 (7th Cir.1990), the Seventh Circuit addressed an argument similar to that presented here. In *Tholl* the defendant had been convicted of impersonating a Drug Enforcement Administration agent. Tholl and his brother had staged bogus raids on drug dealers, pretended to arrest them, confiscated drugs and money, and forced the drug dealers to drive around the neighborhood with Tholl and to point out other potential targets. Guideline § 2J1.4 established Tholl's base offense level at six and provided for a six-level specific offense characteristic enhancement "[i]f the defendant falsely represented himself as a feder-

al officer, agent or employee to demand or obtain any money, paper, document, or other thing of value or to conduct an unlawful arrest or search." Guideline § 2J1.4(b)(1).

Tholl argued that the district court erred when it increased his offense level under both § 2J1.4(b)(1) and § 3A1.3 for restraint of victim. Tholl reasoned that the act of physical restraint is inherent in an arrest and that physical restraint is encompassed within the specific offense characteristic of § 2J1.4(b)(1).

The court of appeals cited three reasons for rejecting Tholl's argument. First, physical restraint is not expressly listed as a specific offense characteristic of § 2J1.4(b)(1). This contrasts with the guidelines for robbery (§ 2B3.1(b)(4)(B)), extortion by force or threat of injury or serious damage (§ 2B3.2(b)(4)(B)), and making, financing, or collecting an extortionate extension of credit (§ 2E2.1(b)(3)(B)). Second, the "arrest" listed in § 2J1.4(b)(1) is not the functional equivalent of "physical restraint," as defined by § 3A1.3 and § 1B1.1. Finally, the court noted that "the district court specifically found that the victim was restrained forcibly when he was required by the defendants to drive around with them in search of other targets." *Tholl,* 895 F.2d at 1185.

■ The three-step analysis employed by the Seventh Circuit is useful for the case at hand. As in *Tholl,* neither the guideline establishing Myers' base offense level, nor the statute to which it refers, uses the term "physical restraint." Similarly, the use of force incorporated into § 2A3.4(b)(1) is not the functional equivalent of physical restraint. An offender could easily use force, such as by striking the victim, without restraining the victim in the manner covered by § 3A1.3. The factor that distinguishes this case from *Tholl* is that Myers was unsuccessful in physically restraining his victim. Each time that Myers attempted to bind or to tape his stepdaughter's hands to the bed, the victim was able to break free. Because Myers never succeed-

---

**1.** In pertinent part 18 U.S.C. § 2241 punishes offenders for sexual abuse accomplished "(1) by using force against that other person; or (2) by threatening or placing that other person in fear that any person will be subjected to death, serious bodily injury, or kidnaping."

ed in binding, tying or locking up his victim, an § 3A1.3 enhancement is not appropriate.

Defendant next contends that the court should interpolate between § 2A3.4(b)(1) and § 2A3.4(b)(2), which provides for only a four-level enhancement if the abusive sexual contact was accomplished as defined in 18 U.S.C. § 2242.[2] According to the commentary, § 2A3.4(b)(2) applies to offenses "accomplished by threatening or placing the victim in fear." Guideline § 2A3.4 Application Note 2. Because Myers used a low level of force and did not inflict any significant bodily injury, he urges that an increase somewhere between four and nine levels is warranted.

A number of other guidelines in effect before November 1, 1989, were susceptible to this type of interpolation. For example, § 2A2.2 governing aggravated assault specified offense level increases for bodily injury (2 levels), serious bodily injury (4 levels), and permanent or life-threatening bodily injury (6 levels). In commentary the Sentencing Commission stated, "If the degree of bodily injury falls between two injury categories, use of the intervening level (*i.e.*, interpolation) is appropriate." Guideline § 2A2.2 Application Note 3. The Introduction to the pre-November 1, 1989 Federal Sentencing Guidelines Manual also authorized this type of departure at page 1.7. The amended version of § 2A2.2, effective November 1, 1989, fills in the gap by allowing increases of three and five levels, but the new version of § 2A3.4 does not acknowledge the possibility of an increase between 'four and nine levels.

■ The court has found no cases construing either § 2A3.4 itself or the gap between § 2A3.4(b)(1) and § 2A3.4(b)(2). However, the Eighth Circuit interpreted § 2A3.1(b)(1), a provision analogous to § 2A3.4(b)(1), in *United States v. Eagle Thunder*, 893 F.2d 950 (8th Cir.1990). The court stated, "We do not believe the Guidelines contemplate a greater degree of force than is necessary to sustain a conviction

under 18 U.S.C. § 2241(a)." *Id.* at 956 (footnote omitted). Myers admittedly used a degree of force that would satisfy 18 U.S.C. § 2241(a). Therefore, his offense fits within the § 2A3.4(b)(1) enhancement for use of force. Because a conviction under 18 U.S.C. § 2242 does not require a showing of any force whatsoever no interpolation is necessary.

■ Myers argues that a sentence within the resulting guideline range is inappropriately harsh. In light of Myers' background, his actions during the offense, and his response to the charges against him, defendant's arguments for a lighter sentence are persuasive. However, Myers' offense is the kind of "heartland" offense for which a departure sentence is not appropriate. Under 18 U.S.C. § 3553(b) the court may not impose a departure sentence unless it finds "that there exists an aggravating or mitigating circumstance of a kind, or to a degree, not adequately taken into consideration by the Sentencing Commission...." In the absence of such a circumstance, the court cannot depart.

Having made these findings, the court determines that the applicable guidelines result in a total offense level of 13, a criminal history score of 0—Category I, and an imprisonment range of 12–18 months.

### III. Sentence

Pursuant to the Sentencing Reform Act of 1984, it is the judgment of the court that the defendant shall be committed to the custody of the Bureau of Prisons to be imprisoned for a term of fifteen months. Upon release from imprisonment, the defendant shall be placed on supervised release for a period of two years. In addition, defendant shall pay a special assessment in the amount of $50 pursuant to 18 U.S.C. § 3013.

The court imposes sentence within the range applicable to this defendant and for this offense because the facts found are of

---

**2.** In pertinent part 18 U.S.C. § 2242 punishes offenders for sexual abuse accomplished by "threatening or placing that other person in fear (other than by threatening or placing that other person in fear that any person will be subjected to death, serious bodily injury, or kidnapping)."

the kind contemplated by the guidelines. No aggravating or mitigating circumstances exist that were not adequately considered by the Sentencing Commission.

The court recognizes that the defendant is basically indigent. Therefore, because of defendant's inability to pay, the court does not order the defendant to pay a fine, costs of imprisonment, or costs of supervision.