KELLY, Circuit Judge,
dissenting.
I agree that the fact and basic circumstances of Strong’s prior, unrelated sexual assault of Clarissa Smith were admissible under Rules 413 and 403 for the reasons given by the court. I disagree, however, *1118 that it was permissible to introduce the particular evidence that the government did on this issue. When it comes to prior sexual assaults, Rule 413 lifts many of the usual restrictions on introducing evidence of a defendant’s prior bad acts to show action in conformity with past behavior. See 23 Charles A. Wright & Kenneth W. Graham, Jr., Federal Practice & Procedure § 5416 (Supp. 2010). But evidence of past sexual assaults is still inadmissible if its probative value is substantially outweighed by the danger of unfair prejudice. See United States v. Never Misses A Shot, 781 F.3d 1017, 1027 (8th Cir. 2015); United States v. Sumner, 119 F.3d 658, 661-62 (8th Cir. 1997).
In this case, the government did not limit the evidence to a straightforward recitation of the fact and circumstances of the prior sexual assault. Instead, the government put on the stand an FBI agent who investigated the prior sexual assault of Clarissa Smith, and who described the assault and its aftermath in graphic detail, telling the jury that Strong “had bashed her head off [a] nightstand” and “it was just blood everywhere” in the room where the assault took place, “including the ceiling.” Through the agent, the government introduced six photographs of Smith’s injuries and the bloodstained room for the jury’s inspection.
Clarissa Smith herself then testified, at one point breaking down on the stand. After some preliminary questioning, the prosecutor began asking her leading questions to elicit a description of the prior assault. Smith simply answered yes to such, questions as: “Did he punch you in the face? ... And did that cause two big black eyes on your face?”; “Did he strangle you? ... And by strangling you, did he put his hands around your neck?”; and “Did he take your head and bash your head into a wooden stand in the bedroom?” At one point, after asking Smith whether she still had a scar on her back from where Strong bit her, the prosecutor asked her to show the scar to the jury, which she did. At closing, the government returned to Smith’s assault, emphasizing the “emotional scars” that made it “difficult for her to relive what happened to her five years ago.” It listed off Smith’s injuries and again showed the jury photographs of her wounds.
Much of the evidence the government introduced pursuant to Rule 413 was, in my view, substantially more prejudicial than probative of Strong’s guilt in this case and therefore inadmissible under Rule 403. Showing the jury photographs, coupled with graphic descriptions of Smith’s injuries and. her own harrowing but largely duplicative testimony, added little in the way of probative propensity evidence to a verbal recitation of Strong’s prior acts, but the potential for these pieces of evidence to “inflame the jury” and “distract[ ] the jury from its task” by provoking an emotional response is evident. United States v. Ford, 17 F.3d 1100, 1103 (8th Cir. 1994); see also Fed. R. Evid. 403 advisory committee’s note (“ ‘Unfair prejudice’ within [Rule 403’s] context means an undue tendency to suggest decision on an improper basis, commonly, though not necessarily, an emotional one.”); Old Chief v. United States, 519 U.S. 172, 181, 117 S.Ct. 644, 136 L.Ed.2d 574 (1997) (warning against the danger that a jury “uncertain of guilt ... will convict anyway because a bad person deserves punishment”); United States v. Rogers, 587 F.3d 816, 822-23 (7th Cir. 2009) (explaining that “evidence of prior sexual offenses may still pose significant dangers against which the district court must diligently guard,” including that “a jury might use such evidence ... to convict a defendant because it is appalled by a prior crime the defendant committed rather than persuaded that he committed the crime charged”); United States *1119 v. Jones, 748 F.3d 64, 71 (1st Cir. 2014) (listing improper inferences); United States v. Guardia, 135 F.3d 1326, 1330-32 (10th Cir. 1998). As a result, I cannot agree that there was “no unfair prejudice” from the admission of the prior sexual assault evidence as it came in at trial. Ante at 1114-15. On the contrary, it was significantly prejudicial, and given the cumulative nature of the evidence, the prejudice substantially outweighed any probative value.
Strong’s conviction, then, can only be affirmed if the erroneous admission of this prior sexual assault evidence was harmless.[3] See Fed. R. Crim. P. 52(a). The government bears the burden of showing that it was. See United States v. Pirani, 406 F.3d 543, 550 (8th Cir. 2005) (en banc). In my judgment, that burden has not been met.
The court’s description of Parkhurst’s confinement, ante at 1111-12, is in fact drawn entirely from Parkhurst’s testimony. The full measure of evidence at trial was far more equivocal. Although Park-hurst testified that Strong physically prevented her from leaving his father’s house from June 6th through June 8th,[4] several other witnesses testified that they saw her, uninjured, at Strong’s father’s house and elsewhere that weekend. Although the testimony from these witnesses was not without its own problems, it was clearly inconsistent with Parkhurst’s testimony. One witness, Paul Stillday, testified that he saw Parkhurst the evening of June 7th in the living room of Strong’s father’s house. Another, Mary Ellen Cook, testified that the evening of June 7th, Parkhurst made a phone call from Strong’s father’s house and then visited Paul Stillday’s home the following day with an acquaintance named Shannon Rainey. Yet another, Reginald Stillday; testified that he gave Strong a ride on June 8th and saw Parkhurst and Rainey in a car by themselves. And Rainey herself testified that she saw Parkhurst relaxing on a bed in the living room of Strong’s father’s house the afternoon of June 8th and gave her a car ride.
There was also reason to doubt the reliability of Parkhurst’s own testimony. Park-hurst agreed on cross-examination that she had been drinking heavily that weekend and that “the alcohol affected [her] ability to remember.” She conceded that she could not remember whether there was a party at Strong’s father’s house on June 7th (there was), or who had come over. Moreover, her account of escaping from Strong’s house was inconsistent: According to Sergeant Alexandra Dow of the Red Lake Police Department, who interviewed Parkhurst at the hospital, Parkhurst said she had escaped while Strong had fallen asleep, but Parkhurst herself testified at trial that she escaped when Strong was in the bathroom. And both Dow and Paul Smith, a criminal investigator with the Red Lake Department of Public Safety, testified that she never reported a sexual assault when they talked to her at the hospital. In fact, she first reported the sexual assault ten days after the car crash, during an interview with an FBI agent.
*1120 Without the prior sexual assault evidence, this would be a weak case for the government. Indeed, it is evident that the jury was influenced by the prior-crime evidence, since both questions it asked of the court during its deliberations concerned the sexual assault of Clarissa Smith, not the crime Strong was on trial for.[5] Under these circumstances, it is difficult to see how the government could show that the admission of the highly inflammatory evidence discussed above was not prejudicial, even if a more clinical description of the prior sexual assault had come in. See supra at 1117-19. I would therefore vacate Strong’s conviction and remand for a new trial.
But even assuming Strong’s conviction should be affirmed, I believe the application of a four-level enhancement in calculating his Guidelines range was erroneous. See USSG § 2A3.1(b)(6). Application of the abduction enhancement requires showing by a preponderance of evidence that Strong abducted Parkhurst. See United States v. Saknikent, 30 F.3d 1012, 1013 (8th Cir. 1994). The factual basis offered by the government for this enhancement is that Strong began dragging Parkhurst back to the house after he caught her as she was trying to escape. But .that is not what the evidence showed. The only evidence of what happened when Strong caught Parkhurst came from Parkhurst herself, who testified as follows:
Q. Okay. And what did he do when he caught you?
A. Start bringing me back to his house. Q. Did he grab you in any way?
A. Yes.
Q. How did he grab you?
A. He wrapped his arms around me.
Q. Where did you go after he wrapped his arms around you?
A. I just remember being by the road if I went anywhere.
(Emphasis added.) In other words, when directly asked where Strong took her, Parkhurst could not say she had been taken anywhere at all.[6]
As the court notes, the Guidelines define “abduction” to mean “that a victim was forced to accompany an offender to a different location.” USSG § 1B1.1, cmt. n.l(a). The testimony quoted above is not a sufficient basis to find that Strong forced Parkhurst to accompany him from one location to another; it is, instead, consistent with Strong grabbing Parkhurst by the side of the road and throwing her in front of a car. That is not an “abduction” by any sense of the term, let alone the Guidelines definition.[7] Cf. United States v. Eagle Thunder, 893 F.2d 950, 954-55, 956 (8th Cir. 1990) (holding that application of abduction enhancement based on victim’s statements was erroneous when she recanted those statements at trial).
*1121 Even if — contrary to the trial testimony — -we assume that Strong did move Parkhurst, there is no testimony suggesting that Strong moved her to “a different location,” as the enhancement requires.[8] See United States v. Whatley, 719 F.3d 1206, 1222-23 (11th Cir. 2013) (applying ordinary meaning of the term “different location” to hold that forcing bank employees to move around at gunpoint did not constitute an abduction); United States v. Eubanks, 593 F.3d 645, 654 (7th Cir. 2010) (holding that dragging a store employee about six feet from back room to front room of a store was not abduction); cf. United States v. Reynos, 680 F.3d 283, 289-91 (3d Cir. 2012) (affirming district court’s determination, after soliciting videos and information on “exact layout” of building, that destination was “a different location” by virtue of its “locked door, separate walls and distance from” origin); United States v. Osborne, 514 F.3d 377, 388-91 (4th Cir. 2008) (relying on fact that victims were moved between sections of store separated by secured door and counter to find that they were moved to “a different location”). The court agrees that “the evidence used to justify the physical restraint adjustment would not have supported the abduction enhancement.” Ante at 1117. That evidence, according to the government, was Parkhurst’s testimony that whenever she would try to leave, Strong “would follow me to the door ... grab me by my hair, pull me back, throw me on the floor.” (Emphasis added.) Reading Parkhurst’s testimony about being seized by the side of the road, one cannot conclude that the abduction enhancement was based on more than this type of limited movement. Her testimony therefore does not support the conclusion that she was dragged to “a different location,” so applying the abduction enhancement was improper.
Finally, I believe the district court’s decision to exclude the defendant’s expert was in error, though it would not, in my view, warrant reversal. The government agrees that the district court was wrong to exclude the expert’s testimony under Rule 608 of the Federal Rules of Evidence. But it nevertheless contends that it was properly excluded because whether Strong pushed Parkhurst in front of the car was irrelevant to the sexual assault charge. Whatever might be said for this claim, it wasn’t the view of the district court or the government at trial.
The trial began with the government spending much of its opening statement on the car crash, telling the jury not just that it took place, but that Strong pushed Park-hurst in front of the car. It then solicited testimony from numerous witnesses, including Parkhurst, Sergeant Dow, and Smith, that Strong pushed Parkhurst in front of the car. In fact, one government witness, Montana Keoke, was called solely to testify about the car crash. In closing arguments, the government returned to the same theme, stressing the fact that Strong “threw [Parkhurst] in front of the car,” and arguing that this was relevant to show an element of sexual assault — namely, that Strong used force.
I agree, of course, that the district court has discretion in determining whether or not to admit evidence. But that discretion must be exercised consistently. Evenhanded application of the rules of evidence is *1122 especially important in criminal cases, where the defendant has a constitutional right against the arbitrary exclusion of his witnesses’ testimony. United States v. Turning Bear, 357 F.3d 730, 733 (8th Cir. 2004). The district court would have been within its rights to have permitted both the government and the defense to introduce evidence about whether Strong pushed Parkhurst, and it would have been equally entitled to have barred both sides from presenting such evidence. What it could not do was permit the government to introduce such evidence but forbid the same from the defense — particularly on the shaky theory that it was relevant for the government but not so for the defense.[9]
Despite the error, I would conclude that the exclusion of the expert was harmless. Even if the exclusion of the expert implicated Strong’s constitutional right to present a complete defense, meaning the verdict could only stand if there was no reasonable possibility that the exclusion of the evidence contributed to the jury’s guilty verdict, Chapman v. California, 386 U.S. 18, 22, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967), that standard is met here. The expert would only have testified that the physical evidence was inconclusive as to whether Parkhurst was pushed in front of the car, not that the physical evidence was inconsistent with Parkhurst’s testimony. Any relevance this conclusion might have had to Strong’s guilt is sufficiently attenuated that one can conclude with confidence that “the guilty verdict ... was surely unattributable to the error.” Sullivan v. Louisiana, 508 U.S. 275, 279, 113 S.Ct. 2078, 124 L.Ed.2d 182 (1993).
In sum, I would vacate Strong’s conviction and remand for a new trial. Even overlooking the admission of the prior sexual assault evidence, however, I would vacate Strong’s sentence and remand for re-sentencing.

. The government appears to agree that Strong preserved his objection to each individual piece of evidence concerning the prior sexual assault. It nevertheless contends that even if the admission of some of the prior sexual assault evidence was erroneous, the district court’s decision should be reviewed for plain error, see Fed. R. Crim. P. 52(b), because Strong objected to all the prior sexual assault evidence, and not just the subset of it that was inadmissible. But the government cites no authority for the proposition that a defendant who objects to all sexual assault evidence, some of which is admissible, waives his otherwise valid objections to the pieces of evidence which are not admissible:

. Parkhurst testified that, at least from June 7th-8th, Strong "required [her] to stay inside the bedroom the whole time.”

. The first, which the district court declined to answer, asked what counts had been dismissed in the prior 'case involving Smith. The second suggested that the jury thought the jury instructions were contradictory insofar as they suggested that the prior sexual assault could be considered in determining guilt, but that Strong could not be convicted because of the prior sexual assault. In response, the district court appropriately attempted to explain the distinction between the two concepts.

. In light of this testimony, the only logical interpretation of Parkhurst’s previous statement that Strong "[s]tart[ed] bringing me back to his house” is that it refers to his grabbing her in preparation for dragging her back.

.The district court made no explicit factual finding to the contrary that might warrant our deference, stating simply that "based upon my memory of the testimony — I have not reviewed the transcript — but I’m satisfied that there’s sufficient basis in the — factual basis in the testimony to support the enhancement.”

. In fact, the government conceded at oral argument that Strong’s conduct was "more of an attempted abduction because he didn’t complete it.” See Oral Argument at 23:35-23:50, http://media-oa.ca8.uscourts.gov/ OAaudio/2016/2/152083.MP3. It may be that this concession decides the issue, as an attempted abduction is not likely to include a person successfully forcing another to accompany him to a different location. Otherwise, it would be an actual abduction.

. Rule 702’s requirement that expert testimony be helpful to the trier of fact is synonymous with the relevance requirement that applies to all evidence; it does not impose a separate hurdle on expert testimony. See Johnson v. Mead Johnson & Co., 754 F.3d 557, 561-62 (8th Cir. 2014); In re Air Crash at Little Rock, Ark., 291 F.3d 503, 514 (8th Cir. 2001); Bonner v. ISP Techs., Inc., 259 F.3d 924, 929 (8th Cir. 2001). The government does not argue that any other requirement of Rule 702 was not met.